so far as it limits the time within which the objection can be raised, is not applicable to Justice's Court. The purpose of that part of said section 1166 quoted is to change the common-law rule. By it the "disqualification of jurors" is not only limited to persons related to a party within the sixth degree, but it is further limited in its application to cases where the person related to the juror raises the objection before the case is opened, and where any other party to the issue raises the objection within six months from the date of verdict. The effect of the statute is to make a judgment based upon the verdict of a jury, on which was a juryman related within the prohibited degree to one of the parties to the action, voidable within the time mentioned, and not absolutely and forever void, as it was under the common law. It is a statute tending to protect the interests of persons dealing in good faith with property in any way affected by a judicial determination based upon the verdict of a jury. It is also in accord with that principle in equity that requires a person to be diligent in asserting his rights. The limitation on the right to raise the objection is the most important part of the change from the common-law rule.

We are of the opinion that subdivision 14 of said section 3347 was intended to make said section 1166, so far as it in any way relates to the disqualification of jurors, including the limitation on the time in which the objection to such disqualification can be raised, applicable to all courts. An objection to a juror sitting in a Justice's Court, on the ground that he is related to a party within the sixth degree, must be taken within the time mentioned in said section 1166.

The judgment should be affirmed, with costs. All concur, except SMITH, J., who dissents.

---

(80 App. Div. 477.)

ROWE v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. March 26, 1903.)

1. CARRIERS—TRANSPORTATION OF EMPLOYES—PASSENGERS—ASSAULT—RULES—
   APPLICATION.
       Rules of a street car company, providing that employés, while riding free, must not occupy seats to the exclusion of paying passengers, and, on open cars, employés riding free must not ride on the front seat, and that employés in uniform may ride free, to the number of five, on a car, provided that if more than that number insist on riding the conductors shall collect fare, applied only to employés riding free, and did not justify an assault on an employé riding in uniform, but paying fare, in ejecting him from the front seat on his refusal to vacate the same.

2. SAME.
       Where a street railway inspector, in ejecting an employé from a seat in a car, acted under a mistaken impression that such employé was not entitled to ride in such seat, under a rule of the company, his act could not be justified on the ground that he had authority to make rules, which the employé was bound to obey.

3. SAME—WITNESSES—CROSS-EXAMINATION—HARMLESS ERROR.
       Where it was claimed that plaintiff gave two versions of his ejection from a street car, and, on his attention being called thereto, testified that, in his opinion, both versions were the same, error, if any, in excluding a question as to whether it was not possible that plaintiff's statement at the trial was not the correct version, and that what he said the day after the occurrence was correct, was harmless.

Appeal from Trial Term, Kings County.

Action by George L. Rowe against the Brooklyn Heights Railroad Company. From a judgment in favor of plaintiff, and from an order denying defendant's motion for a new trial on the minutes, it appeals. Affirmed.

See (Sup.) 75 N. Y. Supp. 893.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

I. R. Oeland, for appellant.
Elmer S. White, for respondent.

HIRSCHBERG, J. On appeal from the judgment rendered on the first trial, we held that a rule prohibiting employés wearing the company's uniform from occupying the front seat of an open car, was a reasonable regulation. See Rowe v. Brooklyn Heights R. Co., 71 App. Div. 474, 75 N. Y. Supp. 893. The rule actually adopted by the company was not read in evidence upon that trial, and the decision was based upon evidence tending to indicate that it was framed in the form suggested. On this trial the rule was read in evidence in connection with other rules upon the same general subject, and its bearing upon the plaintiff's right to recover damages for the assault of which he complains is clearly manifested. In determining the validity of the judgment and order now appealed from, only the exceptions presented in the briefs and on the argument will be considered.

The first exception relates to the plaintiff's right to occupy the seat from which he was ejected. The plaintiff was a motorman in the defendant's employ at the time of the occurrence, and was wearing his uniform, although not engaged that day at work. He was concededly riding as a passenger, his fare having been duly paid. He was riding on the front seat of an open car, and an inspector, a servant of the defendant, although informed of the fact that he was riding as a paying passenger, and not free, ordered him off the seat, and, on his refusal to leave, forcibly removed him from the car, inflicting the injuries for which he has recovered.

The rule which the defendant claims that the plaintiff was infringing, and which, it is therefore asserted, justified the treatment which he received, is the following:

"Employés while riding free must not smoke and must not occupy seats to the exclusion of paying passengers. On open cars employés riding free must not ride on the front seat nor hold any unnecessary conversation with motormen or conductors."

It is apparent that there is nothing in the rule which applies or purports to apply to the plaintiff's case. By its express terms, it applies only to employés who are riding free, and only to them while riding free. The wearing of the uniform has no bearing in the matter. Another rule of the company provides that employés wearing the uniform may ride free, to the number of five upon a car, with the qualification that, if more than that number insist on riding, the conductors must collect their fares. It was therefore within the con-

templation of the defendant, when formulating the rules, that its employés would and could ride as paying passengers while in uniform, and no attempt was made to abridge or limit that right. Our former decision, as I have said, was to the effect that it could have been done, but the case, as now presented, demonstrates that it has not been done. It follows that, so far as the rule in question is concerned, the inspector had no more right to put the plaintiff off the car because he was riding on the front seat than he would have had to put him off for smoking where smoking was permitted, or for occupying a seat to the exclusion of some other paying passenger. The essence of the rule is in the fact of riding free, and with that fact eliminated there is no rule applicable to the plaintiff, as distinguished from any other paying passenger.

It is claimed, however, that the inspector had authority to make rules, which the plaintiff was bound to obey, and that his determination that the plaintiff should not ride on the front seat was at the time, and in effect, the making of a new rule. If this claim is to receive serious consideration, it would be sufficient to say that there is no evidence in the case to the effect that the inspector did make or intend to make such a rule, or that he was acting other than in what he believed to be the proper enforcement of the rule which was read in evidence. But there is nothing in the case tending to indicate that the inspector had the authority suggested, and the claim is wholly untenable.

An exception was taken to the refusal of the court to permit the plaintiff to be asked on cross-examination the question, "Is it possible that what you say here to-day is not the correct version, and what you said the day after this occurrence is correct?" I think this question might very well have been allowed, but I cannot see that the defendant has been prejudiced by its exclusion, inasmuch as both versions were given fully to the jury, and the plaintiff insisted that both versions were "about the same." It may be fairly said that the question was already answered on the cross-examination just preceding, wherein the assumed discrepancy was pointed to the allegation that the inspector struck the witness first, to which he replied, "He struck me and pulled me off about the same time," whereupon the excluded question was asked in almost identical terms, and answered, as I have said, that in the opinion of the witness both versions were the same.

The remaining exception presented relates to the alleged exclusion of the police record as proof in contradiction of the plaintiff that a certain witness testified in the police court in his behalf. The record was not offered in evidence, and the exception as taken presents no question for review. The judgment and order should be affirmed.

**Judgment and order affirmed, with costs. All concur.**